UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY WALDEN,

    Plaintiff,

v.                                                   Case No. 1:23-cv-325
                                                   Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB).

        On July 30, 2020, plaintiff filed an application for DIB alleging a disability onset date of October 15, 2019. PageID.30. Plaintiff identified nine disabling conditions.[1] Prior to applying for benefits, plaintiff completed high school and had past relevant work as a customer service clerk, an information clerk, a personnel clerk, a hospital admitting clerk, and a receptionist. PageID.44, 56. An administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on March 2, 2022. PageID.30-45. This decision, which

---

[1] Plaintiff listed the following conditions: neck scoliosis causes pain; arthritis middle section of my back, lower back and hips; Achilles tendon rupture right ankle; neuropathy on hands and feet; diabetes; hypertension; overweight; allergies indoor and outdoor; an torn meniscus in left knee. PageID.299.

1

was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

2

the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

3

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's application for DIB failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful employment since the alleged onset date of October 15, 2019 and meets the insured status requirements of the Social Security Act through March 31, 2024. PageID.32. At the second step, the ALJ found that plaintiff has severe impairments of: degenerative disc disease of the cervical, thoracic, and lumbar spine; levoscoliosis; degenerative joint disease of the bilateral hips; chronic pain syndrome/somatic disorder; type II diabetes mellitus with neuropathy; and obesity. PageID.32. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.35.

The ALJ decided at the fourth step that,

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can never climb ladders, ropes, or scaffolds; and may occasionally stoop, crouch, crawl, or climb ramps or stairs. Claimant may do no work on narrow, slippery, or moving surfaces. Claimant may occasionally reach overhead with the bilateral upper extremities, must avoid more than occasional exposure to vibration, and may occasionally use foot pedals. Claimant may have only occasional exposure to extremes of heat or cold and may do no work at unprotected heights or with dangerous moving machinery.

PageID.37-38.

The ALJ also found that plaintiff is capable of performing past relevant work as a customer service clerk, an information clerk, a personnel clerk, a hospital admitting clerk, and a receptionist, work that does not require the performance of work-related activities precluded by

her residual functional capacity (RFC).  PageID.44.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 15, 2019 (the alleged onset date) through March 2, 2022  (the date of the decision).  PageID.44-45.

### III. DISCUSSION

Plaintiff contends that the ALJ's RFC findings are contrary to law and not supported by substantial evidence.  Plaintiff raises five errors on appeal.

> **1. The ALJ's findings regarding the opinions of plaintiff's nurse practitioner, Heather Simon, NP-C, are not supported by substantial evidence.**
>
> **2. The ALJ's analysis of the DDS physicians' opinions finding them partially persuasive is contrary to law and not supported by substantial evidence.**
>
> **3. The ALJ's RFC findings are based on an impermissible interpretation of raw medical data.**
>
> **4. The RFC determination failed to consider the effects of all plaintiff's well-documented impairments as required by 20 C.F.R. § 404.1520a, SSR 96-8p and SSR 85-15.**
>
> **5. The ALJ did not properly consider the plaintiff's subjective symptoms.**

The thrust of plaintiff's claim is that the ALJ's RFC determination is not supported by substantial evidence because she failed to properly evaluate the medical opinions in light of plaintiff's MRI studies conducted on October 14, 2021.

As an initial matter, plaintiff contends that the ALJ's evaluation of the opinions of NP Heather Simon (February 1, 2022) and non-examining consultants Ashok Sachdev, M.D. (February 15, 2021) (PageID.91-96) and Larry Jackson, M.D. (September 3, 2021) (PageID.100-108) are not supported by substantial evidence.  For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any

5

specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record."  20 C.F.R. § 404.1520c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2).[2]  If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted).

In addition, the regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered

---

[2] The regulations explain "supportability" as follows:  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The regulations explain "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

6

all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

      The ALJ addressed NP Simon's opinion as follows:

> In February 2022, Heather Simon, F.N.P.-C., provided a functional capacity assessment of the claimant. Ms. Simon opined that claimant could lift and/or carry less than ten pounds frequently, could stand and/or walk for two hours in an eight-hour workday, and could sit for three hours. Ms. Simon opined that clamant could sit 30-45 minutes at one and stand for 10-15 minutes at one time, must walk every thirty minutes for ten minutes, and needed to shift from sitting to standing/walking at will. Ms. Simon opined that claimant needed to recline and elevate her legs every 10-30 minutes; could never climb ladders; and could rarely twist, stoop, crouch, or climb stairs. Ms. Simon opined that claimant was limited in overhead reaching, pushing and/or pulling, handling, and feeling. Ms. Simon opined that claimant should have no exposure to extreme temperatures or high humidity. Ms. Simon opined that claimant may need a walker at times, would sometimes need to lie down or recline, and would be absent more than four days per month (Exs. 19F; 20F). I find this opinion unpersuasive, in that it is inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment and medications, the objective medical studies, the clinical examination findings, and the claimant's reported activities of daily living. The evidence of record does not support the extent of limitations found by Ms. Simon and such findings are inconsistent with largely mild to moderate clinical examination findings including Ms. Simon's own findings of mostly normal gait, usually full strength, and mild to moderately reduced range of motion (Exs. 7F; 18F/9; 13F/8; 5F/13). Given the strength and gait findings in the longitudinal record, there is insufficient support for any assistive device. Such inconsistencies suggest that Ms. Simon relied quite heavily on the claimant's subjective report of symptoms and limitations, and that she may have uncritically accepted as true most, if not all, of what the claimant reported. Yet, as explained above, there exist good reasons for questioning the consistency of the claimant's subjective complaints.

PageID.43.

In addressing NP Simon's opinion, the ALJ cited Ex. 18F/9 (PageID.1209), which is from an examination of plaintiff at Southern Michigan Pain Consultants performed by Barton Wild, M.D. on September 9, 2021 (PageID.1207-1212). The ALJ summarized plaintiff's treatment with that medical group as follows:

> Claimant presented to Southern Michigan Pain Consultants several times in September and October 2021 for steroidal injections. During appointments, she presented with decreased sensation in the lower extremities, positive facet signs, and tenderness in the shoulders and spine; but normal gait, full strength throughout, and intact reflexes (Ex. 18F/1-12).

PageID.40.

At the September 2021 appointment, Dr. Wild treated plaintiff with a medial branch block in the lumbar region. PageID.1210. At a follow-up appointment on October 15, 2021 (PageID.1201-1206), Dr. Wild noted among other findings, "Cervical: Pain is worse with all planes of range of motion." PageID.1203 (emphasis omitted). The record reflects that the doctor reviewed the October 14, 2021 MRI results (PageID.1202) and included new diagnoses of "Spinal stenosis; cervical region" and "Other Myositis; multiple sites." PageID.1203. The doctor also administered an epidural steroid injection in the lumbar region. PageID.1203.

Plaintiff contends that the ALJ did not consider the supportability of NP Simon's opinions, *i.e.*, "[a]lthough she indicated that Ms. Simon's opinions were not well supported, the ALJ did not address Ms. Simon's opinions in the context of the October 2021 MRI results." Plaintiff's Brief (ECF No. 8, PageID.1245). Plaintiff points out that NP Simon was the only medical source who provided an opinion after the MRI studies. *See id.* at PageID.1247.

Plaintiff had three MRI studies on October 14, 2021. Edward Maas, M.D., made the following findings in the "MRI Cervical Spine without Contrast": Alignment (Mild reversal of the normal cervical lordosis. Grade 1 retroliathesis of C3 over C4 and C4 over C5 measures 1 to 2

mm at each of these levels.); Spinal Cord (The cervical spinal cord is normal in caliber and signal intensity.); Vertebrae (The cervical vertebrae are normal in marrow and signal intensity.); C2-3 (Unremarkable.); C3-4 (Disc bulging with small central disc protrusion. Bilateral facet arthropathy. Moderate right foraminal stenosis. No left foraminal stenosis. Mid central canal stenosis.); C4-5 (Mild broad-based disc osteophyte complex with a superimposed left paracentral disc protrusion. Bilateral facet arthropathy. Moderate bilateral foraminal stenosis. Mild central canal stenosis.); C5-6 (Mild broad-based disc bulging. Bilateral facet arthropathy. Mild bilateral foraminal stenosis. Mild central canal stenosis.); C6-7 (Mild disc bulging. No central canal stenosis or foraminal stenosis.); and C7-T1 (Mild disc bulging eccentric to the right. No central canal stenosis or foraminal stenosis.). PageID.1215. Based on these findings, Dr. Maas stated the following impression:

1. Mild reversal of the normal cervical lordosis.

2. Multilevel findings include two levels of mild central canal stenosis at C3-4, C4-5 and C5-6.

3. Several levels of foraminal stenosis are described above.

PageID.1215-1216.

Dr. Maas made the following findings in the "MRI Thoracic Spine without Contrast": Alignment (Slight kyphosis of the thoracic spine.); Spinal Cord (The thoracic spinal cord is normal in caliber and signal intensity.); Vertebrae (Mild chronic anterior wedge compression deformity at T7. No marrow edema. No acute fracture.); Intervertebral Discs (Mild disc bulging with a small central disc extrusion with cephalad migration at T11-12. Mild facet arthropathy this level. Mild central canal stenosis at this level.); Spinal Canal (Mid central canal stenosis at the T11-12 level. No additional levels of central canal stenosis.); Neural Foramina (No significant neural foraminal narrowing in the thoracic spine.); and Paraspinal Tissues:

9

(Unremarkable.).   PageID.1213.   Based on these findings, Dr. Maas stated the following impression:

> 1.  Mild chronic anterior compression deformity at T7 with mild kyphosis of the thoracic spine.
>
> 2.  No marrow edema or any recent fracture.
>
> 3.  Broad-based disc bulging with a superimposed small central disc extrusion at T11-12, and mild central canal stenosis at this level.
>
> 4.  No significant foraminal stenosis in the thoracic spine.

*Id*.

Finally, Dr. Maas made the following findings in the "MR study of the lumbar spine using standard protocol without contrast": Alignment (Mild dextroconvex curvature of the lumbar spine); Vertebrae (Mild Modic type II endplate degenerative signal at L4-5. Several small foci of increased T1 and Increased T2 signal foci are seen consistent with areas of focal fat and/or benign hemangioma formation. No marrow edema.); Conus and Cauda Equine (The conus is normal in appearance terminating at the level of T12-11.); Intervertebral Discs (Moderate disc height narrowing and disc dehydration at L4-5 and L5-S1.); Additional findings (A tiny T2 hyperintensity in the posterior right kidney, most consistent with a tiny cyst.); TI2-L1: Mild disc bulging. No central canal stenosis or foraminal stenosis.); L1-2 (Unremarkable.);  L2-3 (No disc bulge or herniation. Mild facet arthropathy.  No central canal stenosis or foraminal stenosis); L3-4 (Mild disc bulging. Mild facet arthropathy. No central canal stenosis or foraminal stenosis.); L4-5 (Mild disc bulging with a small central disc protrusion. High T2 signal the posterior margin of the protrusion consistent with an annular fissure. Mild bilateral facet arthropathy and ligamentum flavum thickening. No significant foraminal stenosis. Mild central canal stenosis. Mild bilateral lateral recess stenosis.); and L5-S1 (Moderate broad-based disc bulging with a small central disc

protrusion and a moderate right foraminal disc extrusion that impresses on the right L5 nerve root in the foramen. Moderate bilateral foraminal stenosis. Mild bilateral recess.). PageID.1217. Based on these findings, Dr. Maas stated the following impression:

> 1. Multilevel findings include 2 levels of mild central canal stenosis at L4-5 and L5-S1.
>
> 2. Mild bilateral lateral recess stenosis at both L4-5 and L5-S1.
>
> 3. Moderate bilateral foraminal stenosis at L5-S1 to [sic]

PageID.1217-1218.

The ALJ summarized the MRI results as follows:

> An October 2021 MRI of the claimant's cervical spine showed multilevel mild central canal stenosis at C3-C6, mild reversal of the normal cervical lordosis with retrolisthesis at C3-C5, moderate disc height narrowing and degenerative changes, and mild to moderate foraminal stenosis at C3-C6. An MRI of the claimant's lumbar spine showed mild central canal stenosis at L4-S1, mild bilateral lateral recess stenosis at L4-S1, and moderate bilateral foraminal stenosis at L5-S1. An MRI of the thoracic spine showed mild compression deformity at T7 with mild kyphosis, and disc bulging and mild central canal stenosis at T11-T12 (Ex. 18F/13-20).

PageID.40.

The ALJ considered these MRI results in finding that the medical evidence did not corroborate plaintiff's statements regarding the extent of her symptoms and limitations, characterizing the objective medical studies as "mild to moderate overall":

> In reviewing the claimant's statements, the objective medical studies and clinical examination findings do not fully corroborate her alleged symptoms and limitations. For example, despite claimant's allegations that she is unable to walk or stand without difficulty, sit for long periods, move her body, lift objects and use her hands, concentrate, or successfully complete many activities of daily living, the record establishes that claimant has not received the kind of care that one would expect for a totally disabled individual. Moreover, clinical examination findings and objective medical studies were mild to moderate overall, with claimant noting some improvements with pain management treatment and medications. This suggests that the symptoms may not have been as serious as has been alleged in connection with this application.

11

PageID.40-41.

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because it is based upon her interpretation of the MRIs and that she failed to consider this new evidence when evaluating the medical opinions. "[T]he ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Commissioner of Social Security*, 531 Fed. Appx. 719, 728 (6th Cir. 2013). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations imposed by all of his medically determinable impairments. *See* 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In evaluating an individual's RFC, the ALJ considers all medically determined impairments (including impairments that are not severe), *see* 20 C.F.R. § 404.1545, "based on all the relevant medical and other evidence in [the claimant's] case record," 20 C.F.R. § 404.1520(e).

"In making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." *Deskin v. Commissioner of Social Security*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999)). "[B]ecause an Administrative Law Judge as a rule is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony." *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982). As one court explained:

> The Commissioner's determination must be based on testimony and medical evidence in the record. And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.

*Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). "Courts should be particularly skeptical of ALJs using their own medical opinions to bridge or fill gaps in the record on the functional limitations that are to be interpreted from the medical evidence." *Reed v. Secretary of Health & Human Services*, 804 F. Supp. 914, 919 (E.D. Mich. 1992).

Here, the ALJ did not cite a medical opinion to interpret the MRIs or to support her conclusion that that plaintiff had only mild to moderate objective findings. NP Simon, the only medical provider who expressed an opinion after plaintiff's three MRIs, concluded that plaintiff had significant limitations (*e.g.*, she needed to shift from sitting or standing/walking at will, might need to use a walker at times, could rarely twist, stoop, crouch or climb stairs, and never climb ladders). *See* PageID.1222-1225. As discussed, Dr. Wild added new diagnoses on October 15, 2021, after examining plaintiff and reviewing the MRIs.

In addition, it does not appear that the ALJ considered whether the MRIs would affect previous medical opinions pursuant to 20 C.F.R. § 404.1520c, which provides in pertinent part:

> We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case: . . .
>
> (5) *Other factors*. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 404.1520c(c)(5).

Based on this record, the Court concludes that the ALJ did not adequately address the October 14, 2021 MRIs of plaintiff's cervical spine, thoracic spine, and lumbar spine.

Specifically, the ALJ interpreted the MRIs without reference to any medical opinions, treatment records, or expert testimony which addressed the functional limitations indicated in the MRIs. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. of 42 U.S.C. § 405(g).  On remand, the Commissioner will be directed to have a medical expert evaluate the functional limitations indicated in the MRI results.  Once this is accomplished, the Commissioner will need to re-evaluate plaintiff's RFC considering that additional evidence.

### IV.    CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed (1) to have a medical expert evaluate the functional limitations indicated in the MRI results, and (2) to re-evaluate plaintiff's RFC.  A judgment consistent with this opinion will be issued forthwith.


Dated:  March 25, 2024                    /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge